BENTON, Judge,
concurring and dissenting.
I concur in the judgment of the court insofar as it upholds the second amended judgment in favor of Mr. Mariani and against Messrs. Tucker and Fletcher, jointly and severally, in the amount of $100,000 plus prejudgment interest of $61,814. The second amended judgment was entered on jury verdicts finding that the defendants sold unregistered securities to Mr. Mariani; and that, by virtue of the relationship in which they stood to the corporation whose stock they sold, they breached a fiduciary duty owed him, once he became a stockholder.
The second amended judgment also reflects verdicts adverse to the plaintiff on his theory that an escrow agreement was reached by the parties and breached by the defendants.
On cross appeal, Mr. Mariani urges reversal of directed verdicts in favor of the defendants-appellants on counts alleging civil theft, securities fraud, and common law fraud, all in connection with the same transaction. In addition, Mr. Mariani contends that the trial court erred in not allowing the question of punitive damages to go to the jury as to these defendants, not only on the common law fraud count, but also on his successful claims for breach of fiduciary duty.
The whole thrust of the cross appeal is that there was evidence from which the jury might have concluded that “Tucker and Fletcher had knowledge that the monies sent by Mariani were to be held in escrow for a 30-day period and [that] ... Tucker and *226 Fletcher intentionally conveyed this misrepresentation to Mariani.” Ante, p. 225. The trial court ruled that the evidence could not support a verdict finding misrepresentation on such a theory. To the extent the majority concludes otherwise, I respectfully dissent.
There was no evidence that either Mr. Tucker or Mr. Fletcher ever communicated orally with Mr. Mariani or his agents with regard to establishing any escrow agreement. The evidence showed only that Mr. Fletcher signed and sent the letter quoted in pertinent part in the majority opinion. Ante, p. 223. The testimony was that Mr. Tucker “okayed” the letter beforehand.[3] Although the letter says nothing about escrowing funds, it is this document on which Mr. Mariani relied to establish an agreement between himself and the defendants to place the sale proceeds in escrow.[4]
The jury explicitly concluded that the breach of fiduciary duty was not, at least on Mr. Tucker’s part, “by reason of the use of his trust account.” Their verdict on that count reads:
*227 VERDICT FORM FIDUCIARY DUTY
We, the jury, return the following verdict:
1(A). Having weighed the evidence on the claim of Mariani and the defenses of Donald Tucker and Jerry Fletcher, do. you find that Donald Tucker and/or Jerry Fletcher breached their fiduciary duty to Mariani.
Donald Tucker Yes /
No _
If you determine that the answer to the above question is "Yes" Please answer the following:
(a) Was the breach by Donald Tucker by reason of the use of his trust account?
Yes _
No /
(b) Was the breach by Donald Tucker by reason of his corporate duties?
Yes V
No _
Jerry Fletcher Yes /
No _
If you checked "Yes" for any section, please answer Question 1(B). If you answered "No" to each section go to the next verdict Form.
1(B). What is the amount of compensatory damages sustained by Mariani by the breach of fiduciary duty by Donald Tucker and/or Jerry Fletcher?
Donald Tucker ⅛ 50.000.00
Jerry Fletcher ⅛ 50.000.00
That the jury concluded that Messrs. Fletcher and Tucker were equally culpable suggests that they almost certainly did not find either one of them guilty of violating an escrow agreement. In the circumstances, any arguable error in granting the directed verdicts was harmless.

. The entire testimony on this point consisted of the following:
Q Olcay. You and Don Tucker discussed the contents of this letter?
A I don't recall discussing the contents of it. I just — I think Mang, Rett had — I am not sure about this — had put it in his name and I was coming by or they called me, and I stopped by and he said it was okay to sign it.
Q But you recall talking with Don Tucker before you signed this letter?
A Yes, but I don’t know if I discussed the contents of the letter with him.
Q What did you and Don Tucker talk about?
A I just told him they had a letter sent to Mariani, was it okay to sign, it, since it was prepared by an attorney, I am sure he thought it was a proper letter.
Q Don Tucker told you it was okay to send this letter?
A Yes, since Mr. Rett prepared it.

. The evidence showed that Mr. Mariani's son, a lawyer, arranged to wire the $100,000 to Mr. Tucker’s trust account, and that Mr. Tucker himself gave wiring instructions to the younger Mr. Mariani's secretary. But there was no testimony that Mr. Tucker made any representation that it would remain in his trust account for any minimum period. The undertaking (in the letter Mr. Fletcher signed) to make repayment with interest does not suggest that the funds were to be held in a lawyer’s trust account.
The only testimony that Mr. Tucker even had knowledge of the rescission agreement came from Ward Rodgers, the person who originally interested Mr. Mariani in investing:
Q ... Could you tell me what your understanding was regarding the money and when it was to be given to the company after it was wired to Mr. Tucker. Just try to tell me so I can understand what you understand that agreement to be.
A I never got into that. I just assumed that Mr. Tucker was going to handle it correctly. He knew the rescission agreement as well as I did and as well as Fletcher did, because we had had this come up earlier when some friend of mine wanted to make an investment. And when I took their money, they wanted to make the checks payable to me. I said no, I said make them payable to Donald Tucker’s escrow account. And in each case, they were sent there.
[I was told later, and subsequent to Mr. Mariani's money, that I was breaking the law, that I should have those people sign an agreement acknowledging this rescission.
Q The three-day right of rescission?
A Whatever it was.] They were prepared and given to me and I had each of these people sign this agreement, and it was sent back to Tallahassee. I was living in North Carolina at the time, that’s all I can say.
(Emphasis and brackets supplied.) It is by no means clear that the bracketed portion of the testimony pertains to a 30-day rescission offer like the one in Mr. Fletcher’s letter.
In any event, this testimony is not evidence of an escrow agreement of any kind or of either Mr. Fletcher's or of Mr. Tucker's knowledge of such an agreement.